IN THE UNITED STATES DISTRICT COURT

                         FOR THE DISTRICT OF OREGON

ANDREW DISTAD,                                 Civ. No. 07-6322-HO

              Plaintiff,                       ORDER

      v.

MARION COUNTY SCHOOL DISTRICT
24J, *aka* SALEM-KEIZER SCHOOL
DISTRICT 24J,

              Defendant.


      Plaintiff Andrew Distad last worked for defendant Marion County School District 24J on February 13, 2007.  The complaint includes federal and state law claims for unlawful employment practices, including discrimination on the bases of sex and religion, retaliation, wrongful discharge and reckless and intentional infliction of emotional distress.  When the evidence is viewed in the light most favorable to plaintiff, no reasonable trier of fact could return a verdict in favor of plaintiff. Defendant's motion for summary judgment is therefore granted, and this action is dismissed.

## Undisputed Facts

Defendant hired plaintiff as a one-on-one instructional assistant (IA) in August 2004 or August 2005,[1] a few months after plaintiff graduated from high school. Plaintiff worked at the district's Wheatland Community Transition Program. The program serves high-school age students with functional capacities equivalent to children five years of age or younger. Most of the students are unable to care for themselves and have assigned IAs to help them learn basic skills and assist in their care. The teacher in charge of plaintiff's classroom was Pat Ghomrley. Plaintiff's supervisor was Maggie Matthews. Matthews's office is located at defendant's administration building.

Plaintiff is a Christian. He believes that he should not be alone with a woman other than his wife, whom he married in March 2006. This belief originated when plaintiff saw a biographical program on the Reverend Billy Graham. Plaintiff gleaned from the biography that a standard of practice for pastors in Graham's ministry is that a pastor should not be alone with a woman other than his wife so as to limit the potential for allegations of improper conduct.

---

[1] Plaintiff states that he began working for the district at Wheatland in August 2004. Pl's Decl., ¶ 3. However, plaintiff does not dispute defendant's factual statement that his employment commenced at the beginning of the 2005 school year. There is no evidence of events during the 2004-2005 school year.

2 - ORDER

In February or March 2006, plaintiff overheard a joke told between co-workers Katja Coulter and Christina VanHollen. The joke was not directed at plaintiff. Plaintiff does not recall the words or context of the joke, except that the joke involved the subject of male genitalia. Plaintiff told Ghormley that the joke made him uncomfortable. Ghormly wrote on the classroom whiteboard, "People in the classroom are offended by sexual jokes."

On November 11, 2006, plaintiff viewed a cartoon exchanged between VanHollen, Rosalee Graves and others. The cartoon depicted an elderly woman with naked, sagging breasts. Plaintiff viewed the cartoon from a distance of three feet for one half or one fourth of a second, before looking away in disgust. One co-worker viewing the cartoon said, "That gravity will do it to you." Another replied, "Not in my bikini." The co-workers laughed. Plaintiff believes that the presentation of a picture of a woman's breasts is sexual.

Plaintiff told Matthews that he was offended by the cartoon, and that he had told Ghormley about his sensitivity to sexual jokes the year before. Matthews told plaintiff that she would handle the situation. Mathews subsequently talked with Ghormley about plaintiff's complaints.

In January 2007, substitute teacher Ruth Heinen placed her hand on plaintiff's shoulder. Plaintiff asked her not to touch

him. On the same day, Heinen ruffled plaintiff's hair. Plaintiff asked Heinin to stop and told her that he did not come to work to be touched by women. About a week later, Heinin again placed her hand on plaintiff's shoulder and touched plaintiff's back. At some point, plaintiff complained to Ghormley that Heinin touched him. Ghormley told Heinin not to touch plaintiff. Plaintiff did not complain to Matthews about Heinin on or before his last day of work. Heinin, a grandmother, is older than plaintiff. Heinin's son was 41 years old at the time of her deposition.

    Plaintiff brought a cup to work. The cup bore words having something to do with God. On an unspecified date, Heinin overheard a co-worker tell plaintiff "you can't have that here."

    In late January 2007, plaintiff's co-worker Terri Ford handed plaintiff a paper containing a joke printed from Ghormley's e-mail. The joke had an adulterous subject matter involving a postman and referred to "a dumb blonde in her lingerie" who "blew [the postman's] mind with the most passionate love he had ever experienced." The punchline includes the words, "Screw him." Plaintiff handed the joke back to Ford in disgust and walked out of the room. Ghormley followed and stated that she was sorry and that she shouldn't have printed the joke. Plaintiff stated, "You know what? It's fine!" and continued to walk away. Ghormely followed plaintiff through the hallway to

4 - ORDER

another classroom and stated, "I know sexual harassment can be a very serious thing, I'm sorry."

In early February 2007, plaintiff came across a printed e-mail on a table in the break room where plaintiff commonly read his Bible.  The e-mail bears the title, "Lawyers are Idiots!"  The e-mail states that it contains "things people actually said in court. . ."  Plaintiff read and was disgusted by the first entry, which read, "ATTORNEY:  Are you sexually active? WITNESS: No, I just lie there."  A copy of the postman joke was attached to this e-mail.

On or about February 12, 2007, plaintiff left a message on Matthews's voice mail system asking to speak with her.  Plaintiff stated he did not know if he could continue working in his position because it was "stressful and awkward."  The next day, Matthews informed Ghormley of plaintiff's concerns.

On February 13, 2007, Ghormley asked plaintiff to accompany his student to the swimming pool along with other children and a female co-worker named Ann.  Plaintiff informed Ghormley that it's a part of his religion to "walk blamelessly" and not be alone with a woman other than his wife.  Although students would have been present with plaintiff and Ann, they were incompetent to verify that plaintiff's conduct was blameless.  Ghormley reassigned plaintiff's duties so he did not have to go to the pool.

5 - ORDER

At around 11:00AM on February 13, 2007, Ghormly told plaintiff she had just talked to Matthews. Ghormly asked if plaintiff was having problems in the classroom. Plaintiff said that he was, and that Ghormly was one of the problems. Plaintiff complained about the sexual jokes and e-mails, that he was stressed and depressed, and that he was having problems coming to work due to the sexual material passed around the classroom.

Shortly after this conversation, plaintiff accompanied his student to the student bathroom. While plaintiff cleaned the bathroom, Ghormley entered, closed the door and told plaintiff she was sorry and wouldn't want anyone to be uncomfortable. Plaintiff was offended by this encounter because he had previously told Ghormley that he did not want to be alone with a woman other than his wife.

During his lunchbreak that day, plaintiff left the building and phoned Matthews to tell her that Ghormly had confronted him. Matthews told plaintiff to wait outside the building while she called Human Resources (HR). Plaintiff called Matthews back fifteen minutes later. Matthews informed plaintiff she was waiting for a call back from HR to make sure plaintiff did not leave work without authorization. After an hour and a half, Matthews told plaintiff he was cleared by HR to leave for the day. Plaintiff left the premises and did not return to work. Subsequently, plaintiff refused to meet with Matthews to discuss

6 - ORDER

his concerns.

On February 21, 2007, Director of Employee Relations Kathryn Nove sent a letter to plaintiff requiring that plaintiff attend an investigative meeting by the district to discuss his unauthorized leave of absence.  Plaintiff attended the March 9, 2007 meeting with his attorney, and had an opportunity explain his concerns.

Plaintiff refused to return to work despite Nove's assurances that his concerns had been corrected.  Nove warned plaintiff that she would consider his failure to return to work as abandonment of his position.  By letter dated March 19, 2007, Nove informed plaintiff that his employment would be terminated because he refused to return to work after February 14, 2007.

Ghormley's deposition yielded the following colloquy between Ghormley and counsel for plaintiff.

    Q    And did you ensure that the environment was harassment free?

    A    I guess I didn't.

    Q    And you actually contributed to the harassment, would you say?

    A    Well, I guess I did, but I - - after he told me he didn't like it I stopped, and then I forgot.  Then I just forgot.  He just should have - -

    Q    Did it again?

    A    - - reminded me again.  Yeah, I just forgot, - -

Matthews investigated plaintiff's November 2006 complaint

concerning the cartoon, and his February 13, 2007 complaint about the encounter that day with Ghormley in the student bathroom. The bathroom encounter was the only time during his employment with defendant that plaintiff was with a woman other than his wife at work, outside the presence of a person competent to verify plaintiff's blamelessness. Matthews concluded that materials inappropriate for the workplace were distributed in the classroom, and that Ghormley was part of a small group of women distributing the materials. Matthews shredded her investigation notes. Ghormley was the source of the printed materials described above.

## Discussion

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

I. <u>Wrongful Constructive Discharge</u>

> To establish constructive discharge, plaintiff must allege and prove that (1) employer intentionally created or intentionally maintained specified working conditions, (2) those working conditions were so intolerable that a reasonable person in employee's position would have resigned because of them, (3) employer desired to cause employee to leave employment as a result of those working conditions or knew that employee was certain, or substantially certain, to leave employment as a result of those working conditions, and (4) employee did leave employment as a result of those working conditions.

<u>McGanty v. Staudenraus</u>, 901 P.2d 841 (Or. 1995).

8 - ORDER

A reasonable trier of fact could not conclude from the evidence viewed in the light most favorable to plaintiff that any of the first three element of this tort are satisfied by a preponderance of the evidence.

II. <u>Hostile Environment</u>

Plaintiff alleges that defendants violated Title VII and Chapter 659A of the Oregon Revised Statues by subjecting him to a hostile work environment because of his sex and religion. The elements of the hostile environment cause of action are subjection to unwelcome verbal or physical conduct of a sexual or religious nature that, viewing all the circumstances subjectively and objectively, is sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. <u>Fuller v. City of Oakland, California</u>, 47 F.3d 1522, 1527 (9th Cir. 1995); <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23 (1993).

Plaintiff contends that he was subjected to sexual materials on a daily basis, the more he complained, the more materials were left for him to find where he commonly read his Bible, and his Bible study at work caused him problems and resulted in hostility. Co-worker Graves testified that co-workers were hostile because plaintiff did not do his job. Co-worker Range testified that innuendo-type materials were routinely left in the non-employee area of the workplace. Plaintiff alleges the

following specific incidents: the March 2006 male genitalia joke overheard by plaintiff; Ghormley's same day whiteboard message that people are offended by sexual jokes; the November 2006 cartoon momentarily viewed by plaintiff; Ruth Heinin's touch of plaintiff's shoulder, hair and back on two occasions in January 2007; Ford's delivery of the postman joke in late January 2007; plaintiff's discovery of the "Lawyers are Idiots!" paper in the break area in early February 2007; Ghormley's February 13, 2007 bathroom encounter with plaintiff; and an unidentified co-worker's undated comment that plaintiff could not have a cup with a message about God.  There is no evidence that supervisors knew of the last incident.

When all the circumstances are viewed objectively, a reasonable trier of fact could not conclude by a preponderance of the evidence that plaintiff experienced pervasive or severe harassment, altered conditions of employment or an abusive work environment.  Plaintiff argues that he was subjected to sexual materials on a daily basis, but provides specific factual allegations regarding only a few incidents.  The conduct at issue spans nearly a year.  The only conduct directed at plaintiff is Heinin's touching, Ford's delivery of the postman joke and Ghormley's entry into the bathroom.  As a matter of law, the defendant's conduct is not severe enough or pervasive enough to create a hostile environment.  Cf. Vasquez v. County of Los

Angeles, 349 F.3d 634 (9th Cir. 2003) ("A[llegedly harassing incidents, which occurred over the course of more than one year and only two of which contained racially related epithets, did not create a hostile work environment . . .").

III. Discrimination

Plaintiff alleges that defendants violated Title VII and Chapter 659A of the Oregon Revised Statues by discriminating against him based on his sex and religion. As the parties agree, plaintiff must prove defendant subjected him to an adverse employment action or less favorable treatment than similarly situated individuals. An adverse employment action is one that materially affects the terms, conditions or privileges of employment. Kang v. U. Lim America, Inc., 296 F.3d 810, 818-19 (9th Cir. 2002). There is no evidence that plaintiff received less favorable treatment than similarly situated individuals or suffered an adverse employment action. As discussed above, plaintiff cannot prove a hostile environment or constructive discharge.

Plaintiff argues that the evidence supports a claim for failure to accommodate religion. Plaintiff must prove that he informed his employer that the practice of his bona fide religious belief conflicts with his employment duties and his employer threatened him with, or subjected him to, discriminatory treatment because of his inability to fulfill the job

11 - ORDER

requirements.  <u>Lawson v. Washington</u>, 296 F.3d 799, 804 (9th Cir. 2002).  A reasonable trier of fact could not find by a preponderance of the evidence that defendant subjected plaintiff to discriminatory treatment, including discharge, because of his inability to fulfill job requirements.

IV.  <u>Retaliation</u>

Defendants argue that plaintiff cannot prove that defendant subjected him to an adverse employment action, including constructive discharge.  Plaintiff argues simply that the more he complained, the more material appeared in the area where he read his Bible, and he was discharged as a result of his complaints.

In the retaliation context, an adverse employment action is reasonably likely to deter an employee from engaging in protected activity.  <u>Ray v. Henderson</u>, 217 F.3d 1234, 1242-43 (9th Cir. 2000).  As discussed above, a reasonable trier of fact could not find by a preponderance of the evidence that defendant discharged plaintiff, constructively or otherwise.  Nor could a reasonable trier of fact find by a preponderance of the evidence that materials left where plaintiff read his Bible would deter plaintiff or others from complaining about unlawful employment practices, including sexual harassment or other employment discrimination based on sex or religion.  Furthermore, a reasonable trier of fact could not conclude by a preponderance of the evidence that an agent of defendant left objectionable

material where plaintiff could find it because plaintiff complained of conduct he reasonably believed constituted an unlawful employment practice.

V.  First Claim - Section 1983 - Equal Protection

Defendant argues that the Supreme Court has disallowed plaintiff's class-of-one equal protection claim.  Plaintiff responds that this claim is based on his membership in the male and Christian classes.  Plaintiff does not plead or explain the elements of any particular equal protection theory.  As discussed above, no reasonable trier of fact could conclude from the evidence by a preponderance of the evidence that plaintiff experienced intentional discrimination or harassment based on his sex or religion.  Further, no reasonable trier of fact could conclude by the same standard of proof that defendants acted with animus or invidious discriminatory intent.

VI. Reckless & Intentional Infliction of Emotional Distress

As a matter of law, the conduct of defendant or any of its agents is not sufficiently outrageous for plaintiff to prevail on
///


///


///


13 - ORDER

a tort claim under Oregon law for infliction of emotional distress.

### Conclusion

Based on the foregoing, defendant's motion for summary judgment [#17] is granted.  This action is dismissed.

IT IS SO ORDERED.

DATED this  4th  day of November, 2008.


                                              s/ Michael R. Hogan
                                        United States District Judge